UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS KONNETHU, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-2941 |
| | § | |
| HARRIS COUNTY HOSPITAL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   Introduction

Pending before the Court is the defendant's, Harris County Hospital District,[1] motion for summary judgment (Docket Entry No. 13). The plaintiff, Thomas Konnethu, filed a response (Docket Entry No. 14), to which the defendant replied (Docket Entry No. 15). After having carefully reviewed the motion, the responses, the record and the applicable law, the Court grants the defendant's motion.

### II.   Factual Background

This suit is the second employment discrimination and retaliation suit that the plaintiff has filed against the defendant, his former employer. The plaintiff is of Indian descent, he alleges legal blindness in one eye, and he worked for the defendant from October 1979 until he was terminated on September 10, 2010. The defendant is a political subdivision of the State of Texas. On May 8, 2008, after having filed an Equal Employment Opportunity Commission ("EEOC") charge, the plaintiff filed his first suit against the defendant in this district, claiming race and national origin discrimination, hostile work environment, and retaliation under Title VII

---

[1] The plaintiff maintains that the defendant is a/k/a and d/b/a Ben Taub Hospital Center.

and 42 U.S.C. § 1981 ("*Konnethu I*").[2] His claims were partly based on the alleged conduct of Tom Force, one of his supervisors during 2006 and 2007. In *Konnethu I*, the plaintiff sought to be promoted or transferred back to his former position in the nursery. On July 13, 2009, while that litigation was ongoing, the plaintiff's doctor wrote the defendant a letter recommending that it accommodate the plaintiff's medical condition by giving him a covered parking spot and transferring him back to the nursery. On October 28, 2009, the *Konnethu I* court granted the defendant's summary judgment motion in part, giving the plaintiff ten days to file a motion for reconsideration and/or a motion for leave to amend his complaint to pursue a Section 1981 claim via Section 1983. When he failed to do so, that court entered its final judgment on November 17, 2009, dismissing his Section 1981 claim, and granting the rest of the defendant's motion.

Meanwhile, the plaintiff filed another EEOC charge on October 13, 2009, alleging that the defendant engaged in disability discrimination and retaliation October 12, 2009. This second charge was a precursor to his filing the current action on August 17, 2010 ("*Konnethu II*"). He again seeks a transfer, as well as covered parking as a medical accommodation for his alleged visual disability. These claims implicate the purported conduct of Donna Quin, a supervisor who replaced Tom Force. The plaintiff was terminated on September 10, 2010, with Donna Quin citing that he had failed to respond quickly enough to a patient emergency in the intensive care unit. The Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331.

### III. Contentions of the Parties

#### B. The Plaintiff's Contentions

The plaintiff contends that the defendant discriminated against him based on his national origin and his disability, and that it retaliated against him for reporting that discrimination. He

---

[2] *Konnethu v. Harris County Hosp. Dist.*, 669 F. Supp. 2d 781 (S.D. Tex. 2009).

asserts claims for employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964;[3] national origin discrimination in violation of 42 U.S.C. § 1981; violation of the Americans with Disabilities Act ("ADA");[4] and retaliation and entitlement under the Family Medical Leave Act ("FMLA").[5] He argues that the defendant failed to give him appropriate work assignments to accommodate his eye condition and denied him a parking space close to his work site. He also avers that the defendant retaliated against him for complaining about this alleged discrimination. He asserts that his claims in *Konnethu II* cannot be considered part of the same series of transactions as those in *Konnethu I*, because his complaints for each suit relate to different supervisors and different periods of time. In his response, he attempts to add claims that Quin passed him over for promotions, that his report of being bullied was ignored, and that he was terminated in retaliation for bringing this suit.

### B. The Defendant's Contentions

The defendant contends that all of the plaintiff's claims are barred by *res judicata*, because the plaintiff is asserting many of the same claims as were present in *Konnethu I*, and because all of his present claims are based on the same nucleus of operative facts as *Konnethu I*. Additionally, it maintains that his Section 1981 national origin claim fails because he has not made a claim to enforce his rights under 42 U.S.C. § 1983. It asserts that the plaintiff's disability claim fails because the defendant engaged in an interactive process with the plaintiff and provided him a reasonable accommodation in the form of intermittent FMLA leave. It argues that the plaintiff has not exhausted his administrative remedies on his Title VII discrimination

---

[3] 42 U.S.C. § 2000e.

[4] 42 U.S.C. § 12101, *et seq.*

[5] 29 U.S.C. § 2612, 2615.

claim. Finally, it maintains that his FMLA claim fails because he admits that he was never denied FMLA leave and because there is no evidence of FMLA retaliation.

## IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the

existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

All of the plaintiff's present claims are barred by *res judicata* because they are all based on the same nucleus of operative facts and either were or could have been asserted in *Konnethu I*. Additionally, he is seeking privileges rather than rights, and none of his allegations that are

properly before the Court constitute violations of a term or condition of his employment. For those reasons, and for the supplementary reasons that follow, the Court grants the defendant's motion in its entirety.

### A. *Res Judicata*

The Court grants the defendant's whole motion based on *res judicata*. "Claim preclusion, or *res judicata,* bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)). To prove that a claim is barred by *res judicata*, a defendant must show that: (1) the parties in both the prior suit and current suit are identical; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and on the merits; and (4) the plaintiff raises the same causes of action in both suits. *Davis v. Dallas Rapid Area Transit*, 383 F.3d 309, 312-13 (5th Cir. 2004).

The first three elements for *res judicata* have been met: a court of competent jurisdiction entered a final judgment on the merits regarding the identical parties in *Konnethu I*. For the fourth element, the Fifth Circuit determines whether the same causes of action are present in both suits by using the transactional test of the Restatement (Second) of Judgments § 24. *Petro-Hunt, L.L.C.*, 365 F.3d at 395-96 (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 871 (5th Cir. 1984)). Under the transactional test, "the preclusive effect of a prior judgment extends to all rights the original plaintiff had with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C.*, 365 F.3d at 395-96 (internal quotation omitted).

To discern a "nucleus of operative facts," the Court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and

whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Davis*, 383 F.3d at 313 (internal quotation omitted). To make this determination, the Court "look[s] to the factual predicate of the claims asserted, not the legal theories upon which a plaintiff relies." *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992) (internal citations omitted). Granted, subsequent wrongs by a defendant constitute new causes of action. *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981) (internal citations omitted). Nevertheless, when more harms arising from the same causes of action occur during the pendency of a case, they must be brought at that time to avoid the effects of *res judicata*. *Oreck Direct, LLC v. Dyson, Inc.* 560 F.3d 398, 403 (5th Cir. 2009).

The plaintiff's present causes of action are all based on the same nucleus of operative facts as *Konnethu I*. Although some of the claims in the two suits differ, they are almost all based on the plaintiff's desire for a transfer, and all arose prior to the *Konnethu I* court's final judgment. His disability claim and desire for a better parking space arose from medical documentation that he possessed before a final judgment was rendered in *Konnethu I*. In *Konnethu I*, the plaintiff conceded that the defendant granted him intermittent FMLA leave. Nevertheless, his present FMLA claim repeats the same assertion, and it is based on his second EEOC charge dated October 13, 2009, which is before *Konnethu I* was decided. The plaintiff could have and should have sought to amend his complaint to include any subsequent denial of FMLA leave, but he did not. Thus, the Court determines that all of his claims are barred by *res judicata*.

### B. 42 U.S.C. § 1981, National Origin Discrimination

The Court grants the defendant's motion regarding the plaintiff's Section 1981 claim for national origin discrimination, which he alleged in both suits. As the *Konnethu I* court noted, the

plaintiff had not stated a claim to enforce his rights under Section 1981, because he failed to make a claim to enforce his rights under Section 1981 pursuant to 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989) (noting that Section 1981 does not provide a separate cause of action against local government entities) (superseded on other grounds). In both suits, the plaintiff failed to make any factual allegations that the defendant violated Section 1981 based on an official policy or the decision of a final policy maker, even though such allegations are necessary to sustain a Section 1981 claim. *See James v. Texas Collin County*, 535 F.3d 365, 375 (5th Cir. 2008). For that reason, the *Konnethu I* court dismissed this claim, and yet the plaintiff brings the same claim in this suit. Once again he fails to offer any specific factual allegations of this particular type of discrimination, and once again he fails to offer evidence that the defendant had a policy or custom that deprived him of his constitutional rights. Accordingly, the Court grants the defendant's motion on this issue.

    **C.    ADA**

The Court grants the defendants' motion regarding the plaintiff's ADA claim. To make a *prima facie* case of ADA discrimination, a plaintiff must show that he: "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was . . . treated less favorably than non-disabled employees." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

However, the mere violation of the ADA alone does not establish injury. Rather, the plaintiff must show that the defendant's ADA violation proximately caused his actual injury before he can recover. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998). The plaintiff also bears the burden of suggesting a reasonable accommodation to his employer. *Taylor v. Principal Financial Group*, 93 F.3d 155, 165-66 (5th Cir. 1996) (internal citation

omitted). Further, he must demonstrate that he could perform his essential job duties. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993). That is because a "qualified" person must be "able to meet all of a program's requirements in spite of his handicap." *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 406 (1979).

Thus, an employer's duty to make reasonable accommodations does not require him to "relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties." *Robertson v. Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999). Nor does the ADA require an employer to provide the "best" accommodation or the employee's preferred accommodation, but rather only an accommodation "sufficient to meet the [employee's] job-related needs." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (internal citation omitted). Nevertheless, once the employer has been put on notice of its employee's need for an ADA accommodation, both parties must engage in a good faith interactive process to develop a reasonable accommodation. *Loulseged v. Azko Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

Although the plaintiff did not bring a disability claim in *Konnethu I*, his claim arises out of the same nucleus of operative facts as were present during that case: he wants to be promoted or transferred and to receive preferential parking. The *Konnethu I* court found that he had shown no medical reason necessitating another transfer, noting that he had proffered "no evidence showing that his medical conditions . . . were sufficiently disabling to prevent him from performing his job duties in one area of the hospital but not in another."

As for his desired parking space, he could have parked in a covered handicapped space at his work site by obtaining a handicapped decal. Moreover, the proximity of his parking space to

9 / 15

the entrance of his work site is irrelevant to his employment, given the fact that he alleges an ocular disability, despite driving himself a significant distance to get to work each day. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997) (noting that ADA requires employers to reasonably accommodate an employee "only insofar as [his disability] limits an employee's ability to perform his or her job."). Lastly, the letter from the plaintiff's doctor that requested those accommodations was dated July 13, 2009 – before *Konnethu I* was decided. Thus, he could have made those facts known in his earlier suit. The Court finds that he is now barred from asserting this claim.

### D. Title VII Discrimination

The Court grants the defendant's motion regarding the plaintiff's Title VII claim because he has failed to exhaust his administrative remedies, and regardless, he cannot establish a *prima facie* claim of discrimination based on a failure to promote. Prior to seeking judicial relief, a plaintiff alleging employment discrimination or retaliation must exhaust administrative remedies by filing an administrative charge with the EEOC. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (internal citation omitted). "One of the central purposes of [an EEOC] charge is to put employers on notice of the 'existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 879 (5th Cir. 2003) (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). Moreover, a Title VII suit is limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (internal citation omitted).

For those reasons, a court action cannot encompass facts or issues not relating to the subject matter of the EEOC charge. *Fine*, 995 F.2d at 578; *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (internal citations omitted). Otherwise, "allowing a

complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (internal citation omitted). To determine whether a plaintiff's claims fall within the scope of the EEOC charge, the Court begins with the "obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

The plaintiff failed to exhaust his administrate remedies before asserting a Title VII claim because his most recent EEOC charge does not contain a race discrimination claim. Rather, on that charge he only checked boxes for disability and retaliation. Nor does the factual statement portion of his EEOC charge disclose a claim of race discrimination. Accordingly his Title VII discrimination claim fails for this additional reason. *See Manning*, 332 F.3d at 879.

Even assuming *arguendo* that the plaintiff was allowed to assert a Title VII discrimination claim at this juncture, he still has not established his *prima facie* case. An employee presents a *prima facie* case of discrimination in a failure to promote case by demonstrating that: (1) he belongs to a protected class; (2) he sought a position for which he was qualified; (3) he was rejected for that position; and (4) the employer continued to look for applicants with the plaintiff's qualifications. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354-55 (5th Cir. 2001) (citing *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000)). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (internal citation omitted). Cases of race discrimination based on circumstantial evidence are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802-04 (1973).⁶ The plaintiff bears the burden of proving a *prima facie* case of race discrimination by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

The plaintiff makes unproven assertions that the defendant failed to reasonably accommodate him with a transfer or promotion, but he offers no evidence of similarly situated employees of a different race who were treated more favorably. Nor does his complaint adequately allege facts showing that he suffered an adverse employment action on the basis of his race. His subjective belief of race discrimination, without more, is insufficient to meet his summary judgment burden. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (internal citations omitted).⁷ Accordingly, the Court grants the defendant's motion on this issue for this additional reason.

### E. Title VII Retaliation

The Court grants the defendant's motion regarding the plaintiff's retaliation claims. In addition to being barred by *res judicata*, the claim is not established by *prima facie* evidence of retaliation. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2005). The statute defines "protected activity" as

---

⁶ The Fifth Circuit has restated the *McDonnell Douglas* burden-shifting framework as follows:
> [T]he plaintiff must first establish a *prima facie* case of discrimination, and if [he] successfully does so, the defendant shall respond by setting forth its legitimate, non-discriminatory reason for its decision. If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes. However, the plaintiff may still avoid summary judgment if [he] demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination.

*Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

⁷ Moreover, the plaintiff did not assert his failure-to-promote allegations in his complaint, and so they are not properly before the Court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

opposition to any practice rendered unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The protected activity that the plaintiff engaged in, filing an EEOC charge, occurred on October 13, 2009 – one day after the allegedly retaliatory action took place. Therefore, he cannot make his *prima facie* case by showing a causal connection between the protected activity and the adverse action.

In his response, the plaintiff attempts to allege facts in support of his retaliation claim that are outside the scope of his complaint and his EEOC charge. The plaintiff's termination is outside the scope of his EEOC charge, and he has not amended his complaint to include his termination. Thus, he has not given the defendant adequate notice of his causes of action related to his termination.[8] Therefore, he has failed to exhaust his administrative remedies with this allegation as well. Plus, the defendant has offered a legitimate, non-pretextual reason for the plaintiff's termination: his failure to respond quickly enough to a patient emergency in the Intensive Care Unit. While this claim may give rise to a factual dispute, it is neither material nor genuine. It is improperly before the Court, and the plaintiff has offered insufficient evidence to refute the defendant's rationale for its business decision.[9]

### F. FMLA

The Court grants the defendant's motion regarding the plaintiff's FMLA claim. The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under" the act. 29 U.S.C. § 2615(a)(1). In addition, the FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing]

---

[8] *See* Section **V(D)**, *supra.*

[9] This same rationale applies to the plaintiff's bullying claim. That claim arises from the interaction that the plaintiff had with his supervisor during and immediately after the plaintiff's actions which caused an alleged delay in addressing this same patient emergency. *See also, Cutrera*, 429 F.3d at 113.

against any individual for opposing any practice made unlawful" by the act. 29 U.S.C. § 2615(a)(2). The FMLA mandates that an employer grant eligible employees "a total of 12 workweeks of leave during any 12-month period" if the employee has "a serious health condition that makes him unable to perform the functions of his position." 29 U.S.C. § 2612(a)(1). Upon returning from FMLA leave, that employee is entitled to return to his previous position, or to an equivalent position. 29 U.S.C. § 2614(a)(1).

Leave may be taken intermittently if medically necessary. 29 U.S.C. § 2612(b)(1). Employers may not penalize an employee for exercising his FMLA rights. 29 U.S.C. § 2615(a)(1). Nor may employers "deter employees' participation" in FMLA-protected activities. *Arizmendiz v. Univ. of Texas at El Paso*, 536 F. Supp. 2d 710, 715-16 (W.D. Tex. 2009) (internal quotation omitted).

Generally, the *McDonnell Douglas* burden-shifting framework applies to determine whether an employer retaliated against him for exercising his FMLA rights. *Hunt*, 277 F.3d at 768 (internal citations omitted). If the plaintiff meets his burden, the employer's final burden "is effectively that of proving an affirmative defense." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005) (internal citation omitted) (regarding an Age Discrimination in Employment Act claim).

The plaintiff admits that he was never denied intermittent FMLA leave, and he has not alleged that he was demoted. Thus, he has presented insufficient evidence of alleged FMLA interference or retaliation. Accordingly, his FMLA claim fails for this additional reason.

**VI.**     **Conclusion**

Based on the foregoing discussion, the Court GRANTS the defendant's motion.

It is so **ORDERED**.

SIGNED at Houston, Texas this 26th day of August, 2011.

_____
Kenneth M. Hoyt
United States District Judge